# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| FLORICE WHALEN,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 16-CV-02014-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff, Florice Whalen (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et. seq. Claimant alleged she was disabled because of a torn right shoulder rotator cuff. Although the Administrative Law Judge (ALJ) found claimant had severe impairments consisting of right shoulder degenerative joint disease with residuals of surgery, mood disorder, degenerative disc disease of the cervical spine, and asthma (AR 12),[1] he found claimant had the residual functional capacity to perform light work with certain exertional and nonexertional limitations. (AR 14). Therefore, the ALJ found claimant was not disabled. (AR 21). Claimant contends the ALJ erred when he improperly: (1) weighed the opinion of claimant's treating physician; (2) assessed claimant's credibility; and (3) relied upon vocational expert testimony elicited in response to an incomplete hypothetical question. (Doc. 16).
For the reasons that follow, the Commissioner's decision is affirmed.

---

[1] "AR" refers to the administrative record below.

## II. FACTUAL BACKGROUND

Claimant was born in 1965 and was forty-six years old at the time of her application. (AR 249, 298). Claimant completed high school. (AR 303). Claimant reported past work as a child care provider, a ham trimmer, a home care provider, a housekeeper, and an airport ramp operator (loaded and unloaded airplanes). (AR 35, 303). Claimant initially alleged she became disabled on October 12, 2007, (AR 249), but at the hearing she amended the alleged date of the onset of her disability to December 5, 2012. (AR 33).

## III. PROCEDURAL BACKGROUND

On December 5, 2012, claimant filed her application for disability benefits. (AR 249-57). The Commissioner denied claimant's application initially and upon reconsideration. (AR 136, 154). Claimant then requested a hearing before an ALJ. On September 3, 2014, ALJ David G. Buell conducted a hearing; claimant appeared in person and testified, as did Randall Harding, a vocational expert. (AR 28-70). On September 18, 2014, the ALJ issued a decision denying claimant's application. (AR 10-21). On December 11, 2015, the Appeals Council denied claimant's request for review (AR 1-3), leaving the ALJ's decision as the final decision of the Commissioner.

On February 11, 2016, claimant filed a complaint in this Court seeking review of the Commissioner's decision. (Doc. 5). On April 25, 2016, with the consent of the parties, United States District Court Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. (Doc. 14). The parties have now briefed the issues, and on August 31, 2016, the Court deemed this matter fully submitted and ready for decision. (Doc. 18).

## IV. DISABILITY DETERMINATOINS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A), 20 C.F.R. § 416.905(a). A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4)

[u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks and citation omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed

in the regulations. *Id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in step four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## V.    THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At step one, the ALJ found claimant was not gainfully employed and had not engaged in substantial gainful activity since December 5, 2012. (AR 12).

At step two, the ALJ determined claimant had the following severe impairments: right shoulder degenerative joint disease with residuals of surgery; mood disorder; degenerative disc disease of the cervical spine; and asthma. (AR 12).

At step three, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 12-14).

At step four, the ALJ determined claimant's RFC. The ALJ found that claimant had the residual functional capacity to perform light work, except she should not crawl or climb. (AR 14). The ALJ also imposed the following exertional and nonexertional limitations:

> She is able to fully extend her right arm to reach for an object or to push and pull only occasionally. There is no limit on use of either arm when it comes to working at a desk or bench in front of her. There are no limits on her left upper extremity. She should not be exposed to irritants, fumes or dust. She is limited to simple, routine and repetitive work, work that does not require use of independent judgment on the job.

*Id*. The ALJ found claimant was unable to perform any past relevant work. (AR 20).

At step five, the ALJ determined there are jobs that exist in significant numbers in the national economy that claimant could perform. (AR 20-21). The ALJ found claimant could work as a router, collator operator, or a small products assembler. *Id*.

## VI.   *DISCUSSION*

Claimant argues the ALJ's decision is flawed for three reasons:

1.  Claimant argues substantial evidence does not support the ALJ's residual functional capacity assessment because he failed to properly weigh the medical evidence and afford proper weight to claimant's treating physician. (Doc. 16, at 13-19).

2.  Claimant argues substantial evidence does not support the ALJ's credibility determination because he improperly "picked and chose only evidence supporting his ultimate finding of non-disability." (Doc. 16, at 19-22).

3.  Claimant argues substantial evidence does not support the ALJ's finding at step five that claimant could work at jobs available in the economy because the ALJ relied on vocational expert testimony elicited in response to an incomplete hypothetical question. (Doc. 16, at 22-23).

The Court will address these arguments separately below.

6

### A. The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (internal citation omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks and citation omitted). The Eighth Circuit explains the standard as "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation marks and citation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (internal citation omitted). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual

record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Whether Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment*

The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). It was the ALJ's responsibility to determine claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Claimant, though, has the burden of establishing the RFC. *Eichelberger*, 390 F.3d at 591; *Goff*, 421 F.3d at 790. This Court will uphold the ALJ's RFC determination if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ must consider all relevant medical and other evidence in the record to determine a claimant's RFC. 20 C.F.R. § 416.945(a)(1). Although the RFC determination draws from medical sources, the RFC is ultimately an administrative decision reserved to the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir.

8

2007). An ALJ may use medical records, physician observations, and the claimant's subjective statements about his capabilities to support the ALJ's RFC finding. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

Claimant particularly claims the ALJ erred in determining claimant's RFC because claimant believes the ALJ should have given more weight to claimant's treating physician, Dr. Mordechai Lederman. Generally, an ALJ should give a treating physician's opinion controlling weight, but a treating physician is not inherently entitled to such weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (internal quotation marks and citations omitted). An ALJ should give a treating physician's opinion controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96–2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (quoting 20 C.F.R § 404.1527(d)(2)). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id*.

In this case, the ALJ properly considered the record as a whole and appropriately resolved the conflicts among claimant's treating physician's opinion and the rest of the medical evidence. Indeed, the ALJ carefully reviewed Dr. Lederman's medical records and varied the amount of weight he gave Dr. Lederman's opinions depending on the extent to which they were consistent with Dr. Lederman's own records and the rest of

9

the evidence. The ALJ gave "great weight," for example, to Dr. Lederman's opinion on October 15, 2013, that although claimant's impairments may impact her choice of employment, "I do not believe it totally disable [sic] her from work." (AR 17). On the other hand, the ALJ did not give "much weight" to Dr. Lederman's May 27, 2014, RFC Questionnaire opinions indicating "claimant was significantly restricted in many areas." (AR 18). The ALJ explained he afforded little weight to Dr. Lederman's RFC questionnaire opinions because they: (1) were "not supported by signs and findings consistent with the degree of limitation indicated"; (2) were internally inconsistent; (3) were inconsistent with Dr. Lederman's own treatment notes; (4) relied on a "complete acceptance of the claimant's allegations"; and (5) were inconsistent with other evidence. (AR 18-19). Further, the ALJ gave no weight to Dr. Lederman's conclusions that claimant's symptoms "constantly" prevented her from performing simple work because that opinion was inconsistent with his earlier opinion. (AR 19).

The Court's independent review of the record satisfies it that there is substantial evidence in the record as a whole to support the ALJ's conclusions and the weight he afforded claimant's treating physician. The ALJ found Dr. Lederman's opinion that claimant could sit for only three hours and stand or walk for only three hours in an eight-hour day internally inconsistent with Dr. Lederman's opinion claimant could work an eight-hour day within the limits indicated. (AR 18). In his 2014 RFC questionnaire, Dr. Lederman both indicated claimant could sit/stand/walk for only six hours a day (AR 771), and that she was "physically capable of working an 8 hour day, 5 days a week employment on a sustained basis" (AR 772). This appears inconsistent on its face. Claimant argues it is not inconsistent because Dr. Lederman also indicated claimant would need five-to six unscheduled breaks of 15-30 minutes during the day. (Doc. 16, at 15 (citing AR 771)). Claimant is correct that if one adds up these breaks and combines them with the six hours Dr. Lederman said claimant could work, that the amount of time could equal eight hours. Nevertheless, Dr. Lederman did not provide that explanation

in his opinion and the ALJ was not unreasonable in concluding that Dr. Lederman's RFC questionnaire was internally inconsistent.

Likewise, it was not unreasonable for the ALJ to conclude that Dr. Lederman's opinion regarding the limitations of claimant using her left arm was inconsistent with Dr. Lederman's own notes. (AR 19). In the questionnaire, Dr. Lederman opined that claimant could use her left arm/hand/fingers only 15% of the time during an eight-hour day. (AR 772). There is nothing in Dr. Lederman's records to support this limitation. Claimant had surgery on her right shoulder and the medical records adequately support the ALJ's conclusion that claimant is limited in the use of that arm. (AR 14). On the other hand, literally, Dr. Lederman's notes for the same day he filled out the RFC questionnaire contain no reference to any injury or limitations to claimant's left arm. (AR 741-43). Dr. Lederman's notes from other visits reference only right shoulder pain. (AR 746-47, 749-50, 753, 759, 764, 766, 768). In an understatement, claimant concedes, "Dr. Lederman's opinion relating to [claimant's] left arm and hand is admittedly over restrictive as [she] testified she can use her left arm." (Doc. 16, at 16).

Furthermore, the ALJ reasonably discounted the weight given to Dr. Lederman's May 2014 opinion in light of other evidence. For example, the ALJ found claimant's daily activities, which included preparing meals, caring for her personal needs, doing puzzles, and driving,[2] inconsistent with the limitations Dr. Lederman found. (AR 13, 17, 19).

The ALJ's assignment of "no weight" to Dr. Lederman's opinion that claimant's symptoms would "constantly—every day" interfere with her attention and concentration to perform simple work-related tasks (AR 771) was similarly reasonable. The ALJ found this to be inconsistent with Dr. Lederman's October 2013 opinion that her shoulder injury may impact claimant's choice of jobs, but did not make her disabled. (AR 19). Claimant

---

[2] The Court finds that the record is, at best, inconsistent with regard to whether claimant drives a car. *Compare* AR 99, 360, 374 (reflecting she drives), *with* AR 55, 112 (reflecting she does not drive).

argues, "it is clear" that Dr. Lederman believed claimant's pain, and not cognitive issues, would constantly interfere with her ability to perform simple work-related tasks. (Doc. 16, at 16). That is probably true, but that explanation does not detract from the ALJ's conclusion. The ALJ did not indicate that he believed Dr. Lederman's opinion related to claimant's cognitive limitations. The ALJ simply referenced the opinion and noted that the doctor's observations from the visit that day did "not include any limits in that regard." (AR 19). The ALJ noted as well that during the hearing claimant was able to "attend[ ] to the questions put to her with no apparent limit" (AR 19), which is inconsistent with her being in so much pain that it would interfere with her attention and concentration. *See Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (holding that an ALJ may rely upon the demeanor of a claimant during a hearing, among other things, to determine the credibility of a claimant's alleged limitations).[3] In the end, it was not unreasonable for the ALJ to conclude that Dr. Lederman's opinion that claimant's pain would constantly interfere with her ability to perform simple work-related tasks is inconsistent with his prior opinion that she is not disabled from working.

The ALJ also found Dr. Lederman's May 2014 opinion inconsistent with the results of an independent medical examination by Dr. Theron Q. Jameson. (AR 19). The ALJ found Dr. Jameson's opinion that claimant was able to perform light work (AR 443-44) consistent with the rest of the medical evidence. The ALJ also found this opinion similarly consistent with opinions by reviewing physicians C. David Smith and John May, both of whom found claimant could perform light work. (AR 19, 94-97, 109-112).

The ALJ afforded "no weight" to Dr. Lederman's May 2014 opinion that claimant would miss work three to four times a month because Dr. Lederman did not support this conclusion with any medical evidence and his notes do not reflect such a limitation. (AR 19). In her brief to this Court, claimant did not address this ground. The Court's

---

[3] The Commissioner cited *Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014), for this same proposition, but the Court does not find that decision addressed this issue.

independent review of the record supports the ALJ's conclusion that there is nothing in Dr. Lederman's medical records that would support the limitation.

The ALJ did not credit Dr. Lederman's May 2014 opinion that claimant could only occasionally lift 10 pounds. (AR 19). The ALJ noted that this conclusion was inconsistent with claimant's own testimony and medical records indicating claimant could lift 10 pounds with her injured right arm alone. (AR 19, 49, 444). Claimant argues that other records show claimant should not perform any lifting of greater than 10 pounds from her waist to her chest, and there is nothing in the record "indicating how often she can lift 10 pounds with her right arm." (Doc. 16, at 17). These arguments are unavailing. If there is nothing in the record showing how often claimant can lift 10 pounds, there is nothing in the record to support Dr. Lederman's conclusion that claimant can only lift 10 pounds occasionally. The ALJ acted within reason in weighing all the medical evidence and claimant's testimony and finding it inconsistent with Dr. Lederman's opinion that claimant could only occasionally lift 10 pounds.

Finally, the ALJ discounted the weight afforded to Dr. Lederman's May 2014 opinion because for him to reach that opinion, it required complete acceptance of claimant's subjective claims. (AR 19). The ALJ's determined claimant's subjective descriptions of her symptoms and limitations were not credible. (AR 15). For the reasons set forth in the following section, the Court finds substantial evidence in the record as a whole supports the ALJ's credibility determination. Accordingly, the ALJ reasonably discounted Dr. Lederman's opinion to the extent it relied on claimant's subjective complaints.

In sum, the weight the ALJ afforded Dr. Lederman's opinion was within the ALJ's zone of choice. It is for the ALJ, and not this Court, to resolve conflicting evidence and opinions. Where, as here, that resolution was supported by substantial evidence in the record as a whole, this Court will not disturb that finding.

C. *Whether Substantial Evidence Supports the ALJ's Credibility Determination*

Claimant argues "[t]he ALJ's credibility determination is unsupported by substantial evidence because the ALJ improperly picked and chose only evidence supporting his ultimate finding of non-disability." (Doc. 16, at 19). In determining a claimant's RFC, the ALJ must consider, *inter alia*, the claimant's own descriptions of her limitations. *Pearsall*, 274 F.3d at 1217. Consequently, the ALJ must evaluate the claimant's credibility. *Id.* at 1218. *See also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (noting that the ALJ had to assess claimant's credibility before determining his RFC).

"[W]hen evaluating a claimant's credibility, in addition to considering the absence of objective medical evidence to support complaints of pain, an ALJ should consider a claimant's reported daily activities, the duration, frequency and intensity of her pain, precipitating and aggravating factors, medication, and functional restrictions." *Steed v. Astrue*, 524 F.3d 872, 875 n.4 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see* 20 C.F.R. § 404.1529(c)(3). "The ALJ [i]s not required to discuss methodically each *Polaski* consideration, so long as [the ALJ] acknowledged and examined those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). "It is sufficient if [the ALJ] acknowledges and considers those factors before discounting a claimant's subjective complaints." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). *Accord Goff*, 421 F.3d at 791-92. In the written decision, an ALJ must make express credibility determinations detailing reasons for discounting a claimant's subjective complaints of pain. *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010).

A reviewing court cannot substitute its own credibility judgment for that of the ALJ's. An ALJ's credibility determination is entitled to deference because the ALJ is in a better position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). "'Where adequately explained and supported, credibility

findings are for the ALJ to make.'" *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (quoting *Lowe*, 226 F.3d at 972). "We 'will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain.'" *Goff*, 421 F.3d at 792 (quoting *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001)).

In this case, the ALJ considered claimant's subjective complaints, found "that the claimant is unreliable as a source of information regarding her functional capacity" and therefore did not give her allegations and descriptions of her symptoms significant weight. (AR 15). In assessing claimant's credibility, the ALJ specifically referenced the *Polaski* decision, and acknowledge the *Polaski* factors. The Court finds that substantial evidence in the record as a whole supports the ALJ's credibility finding.

The ALJ noted "[a]t the hearing the claimant held her right arm essentially motionless and attempted to give the impression it would be too painful to use it for any activity." (AR 15-16). Based on claimant's most recent employment which required her to use her right arm, the ALJ concluded, "her presentation at the hearing was not an accurate reflection of what she can do." (AR 16). In her brief to this Court, claimant takes umbrage at this finding, calling it "nonsensical." (Doc. 16, at 20). Claimant states she left her last job because the repetitive job caused her too much pain. *Id*. "[An] ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations." *Johnson*, 240 F.3d at 1147-48. *See also Steed*, 524 F.3d at 876 (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony). On the other hand, an ALJ should not base a credibility determination solely on the personal observation of a claimant during the hearing. *See, e.g.*, *Muncy v. Apfel*, 247 F.3d 728, 736 (8th Cir. 2001) (holding that a claimant's "failure to 'sit and squirm' with pain during the hearing cannot be dispositive of his credibility."); *Miller v. Sullivan*, 953 F.2d 417, 422 (8th Cir. 1992) (observing that a claimant's appearance and demeanor at the hearing can be deceiving).

The Court cannot second-guess the ALJ's conclusion that the manner in which claimant presented herself at the hearing was not reflective of her real limitations. The ALJ observed that claimant acted as if she could not use her right arm at all, and claimant does not challenge that observation. Claimant's last job aside, the rest of the evidence in the record does not reflect a person who has lost complete use of her right arm. Moreover, the Court finds the ALJ did not base his credibility finding solely on this observation.

The ALJ found claimant's testimony that she "is unable to lift or grasp anything" in her right hand because of recurrent numbness and pain incredible because that alleged functional inability is not reflected in the medical records. (AR 16). Claimant takes issue with this conclusion, pointing to records reflecting claimant's complaints of numbness and pain in her right arm and hand. (Doc. 16, at 21). The ALJ's point, however, is claimant never reported to treatment providers that she is unable to lift or grasp anything. Although medical records reflect claimant complained of numbness and pain on occasion, they do not support her assertion at the hearing that she is unable to lift or grasp anything with her right hand.

The ALJ reviewed at some length the medical records and found they were consistent with a finding claimant had "minimal, tolerable and non-disabling" problems, but inconsistent with claimant's description of her symptom. (AR 16-18). Claimant argues the ALJ improperly picked and chose evidence to buttress his conclusion. (Doc. 16, at 21-22). Indeed, claimant argues, "the ALJ is asserting that [claimant] must allege her disabling impairments at every primary care visit, otherwise she lacks credibility," a standard which claimant labels "ridiculous." (Doc. 16, at 22). The absence of complaints during medical visits, however, is a proper basis upon which an ALJ can assess a claimant's credibility. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (affirming adverse credibility determination based in part on inconsistency between claimant's assertion that she had problems concentrating because of pain medication but

16

she never complained to her doctors of the side effect). The Court finds little indication that the ALJ cherry picked only favorable evidence from the record, or that he adopted a standard that required claimant to allege her disabling impairments at every doctor's visit. Rather, the ALJ's evaluated the medical record as a whole and in some detail, and cited examples of findings and visits that failed to reflect a person disabled from any form of employment. That is not cherry picking; that is marshaling evidence to support a conclusion. Were the ALJ to cite no examples, claimant would be arguing the ALJ reached a credibility conclusion without an explanation.

Moreover, the ALJ considered other factors as well. For example, the ALJ noted, "claimant has a very poor work record which does not allow for an inference that she would be working if not for her medical condition." (AR 19). Indeed, at the hearing claimant admitted that she had not even tried to perform any other type of work in the last couple years. (AR 43). A sporadic or poor work record is a proper basis upon which to assess a claimant's credibility. *See*, *e.g.*, *Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010) (holding that an ALJ properly considered claimant's sporadic work history in discounting her credibility); *Gonzales v. Barnhart*, 465 F.3d 890, 894-95 (8th Cir. 2006) (affirming an ALJ's decision to discount a claimant's credibility based on, *inter alia*, a poor work history). The ALJ also considered the fact that claimant's doctor declined to prescribe the medication claimant sought, and claimant's noncompliance in taking medication he did prescribe, as detracting from the credibility of claimant's subjective complaints. (AR 15-19, 661, 737). Again, this was a proper basis upon which to make a credibility determination. *See Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (holding the ALJ properly could discount the claimant's credibility where the claimant failed to take medications as prescribed). Finally, the ALJ considered claimant's statement that she could drive, an activity it would be reasonable to assume is inconsistent with a total loss of function in claimant's right arm. (AR 19).

Accordingly, the Court finds substantial evidence in the record as a whole supports the ALJ's credibility assessment of claimant's subjective complaints.

### D. Whether Substantial Evidence Supports the ALJ's Step Five Determination

Claimant makes what she concedes is a repetitive argument that the ALJ's determination at step five, that claimant could work at jobs available in the national economy, is flawed because the ALJ erred in determining claimant's RFC and weighing claimant's credibility. (Doc. 16, at 22-23). In other words, claimant argues that the hypothetical question the ALJ posed to the vocational expert was incomplete because the ALJ made the wrong determinations in the first instance. "In posing a hypothetical to a vocational expert, an ALJ need only include impairments that the ALJ finds credible." *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (citing *Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004)). Because the Court concludes the ALJ did not err in determining claimant's RFC or in assessing claimant's credibility, it follows that the Court finds the ALJ did not err in posing the hypothetical question to the vocational expert.

## VII. CONCLUSION

For the reasons set forth herein, the Court **affirms** the Commissioner's determination that claimant was not disabled. Judgment shall be entered against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 9th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa